**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 94-20618
(Summary Calendar)

TRANSAMERICA INS. CO.,

Plaintiff-Appellee,

versus

PAUL R. AVENELL and GAYLE AVENELL,

Defendants-Appellants.

Appeal from the United States District Court
For the Southern District of Texas
(CA-H-93-2789)

August 17, 1995

Before DUHÉ, WIENER, and STEWART, Circuit Judges:

PER CURIAM[*]:

This appeal arises from an indemnity dispute between Defendants-Appellants Gayle and Paul R. Avenell and Plaintiff-Appellee Transamerica Insurance Company (Transamerica). Transamerica filed suit and moved for summary judgment, contending that the Avenells had breached their obligations under an indemnity

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

contract. The Avenells responded that (1) all conditions precedent to the contract had not been met, (2) the indemnity contract was unconscionable, and (3) the indemnity contract was void as against public policy. We find the Avenells contentions devoid of merit and affirm the district court.

I.

FACTS AND PROCEEDINGS

The following facts are not in dispute. Mr. Avenell is the President and owner of Tacon Mechanical Contractors, Inc. (Tacon). Transamerica, acting as surety, provides payment and performance bonds to contractors and subcontractors in connection with construction projects. Tacon subcontracted to perform the heating, ventilating, and air conditioning work for Cahaba Construction Company (Cahaba) in the construction of New Caney High School (NCHS job). In turn, Tacon sub-subcontracted with Grant Sheet Metal, Inc. (Grant) for the fabrication and installation of the duct work on the NCHS job. Transamerica issued a performance bond and a labor and material payment bond to secure Tacon's obligations under its subcontract with Cahaba. As part of Transamerica's consideration for issuing these bonds on behalf of Tacon, Mr. Avenell executed an agreement (Indemnity Agreement) obligating both Tacon and the Avenells, personally, to indemnify Transamerica against any loss Transamerica might incur under the NCHS bond.

A dispute arose between Tacon and Grant over payment and performance at the NCHS job. Tacon dismissed Grant from the NCHS job and secured other contractors to complete the work. Grant

2

filed suit (Grant litigation) against Tacon and Cahaba's surety, Seaboard Surety Company (Seaboard). In January 1993, the 55th Judicial District Court of Harris County, Texas entered final judgment on the jury verdict in favor of Grant, casting Tacon and Seaboard in judgment. In March 1993, Cahaba made demand on Tacon to pay the judgments. Tacon, however, had filed for bankruptcy and could not pay the judgment. Cahaba notified Transamerica that, as Tacon's surety, it was responsible for the judgment.

Tacon and Seaboard appealed from the judgment in the Grant litigation. In September 1993, however, Cahaba and Seaboard decided to settle with Grant and secured dismissal of Seaboard from the appeal.[1] Not interested in settlement, Tacon elected to continue the appeal alone and wrote to Transamerica demanding that it make no payments on any claims arising from the Grant litigation. But as Tacon neither requested Transamerica to conduct the appeal nor posted a security bond to obtain Transamerica's assistance in the appeal, Transamerica proceeded to settle with Cahaba and Seaboard, paying them $79,000.00 and $241,000.00, respectively.

Having paid on the bonds, Transamerica looked to the Avenells for indemnification, but they refused to indemnify Transamerica. In September 1993, Transamerica filed this lawsuit against the Avenells in federal district court, basing jurisdiction on diversity and alleging breach of the Indemnity Agreement. In March

---

[1] Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, 1993 WL 331790 (Tex.App.--Houston [14th Dist.] 1993).

1994, Transamerica filed a motion for summary judgment on all claims, supporting its motion with proper affidavits and exhibits. The Avenells responded, contending that (1) all conditions precedent to the Indemnity Agreement had not been met, (2) the Indemnity Agreement was unconscionable, and (3) the Indemnity Agreement was void as against public policy. In support of their contentions, the Avenells presented the district court with (1) an affidavit by Paul Avenell, (2) a copy of their brief to the Texas Court of Appeals in the Grant litigation, and (3) a photocopy of the letter to Transamerica, demanding that it not pay any claims arising out of the Grant litigation.

In May 1994, the district court granted summary judgment in favor of Transamerica, concluding that the Avenells had failed to produce evidence that would allow a reasonable juror to find in favor of the Avenells. The Avenells timely appealed.

In December 1994, during the pendency of this appeal, the Texas Court of Appeals for the Fourteenth District affirmed the judgment in the Grant litigation, but declined Grant's request to assess the Avenells a frivolous appeal penalty.[2] Tacon then filed an application for writ of error with the Texas Supreme Court. That court has ordered Grant to respond. As of this writing, the Texas Supreme Court has yet to act on this writ.

---

[2] See Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc., 889 S.W.2d 666 (Civ.App.--Houston [14th Dist.] 1994, writ requested).

4

II.

ANALYSIS

A.   STANDARD OF REVIEW

We review the district court's grant of a motion for summary judgment de novo, applying the same standard as the district court applied.[3]  Questions of law are decided just as they are outside of the summary judgment context: de novo.[4]

B.   BURDENS OF PROOF

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[5]  For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[6]  Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

---

[3] Berry v. Armstrong Rubber Co., 989 F.2d 1408, 1412 (5th Cir. 1993); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.)(citations omitted), cert. denied, -- U.S. --, 113 S.Ct. 462, 121 L.Ed.2d 391 (1992).

[4] Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988.

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986)

[6] Id. at 322, 106 S.Ct. at 2553-54;  see also, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir. 1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir. 1991).

that party" is a full trial on the merits warranted.[7]

C.   BREACH OF CONTRACT

Despite its complex factual and procedural history, this case presents a straight-forward breach of contract claim.  To prevail at the summary judgment stage, Transamerica's evidence must establish every element of its claim.  Under the Texas law of indemnification, Transamerica must establish five elements: (1) a contractual indemnity agreement existed between the Avenells and Transamerica, (2) the agreement obligated the Avenells to indemnify Transamerica in the event claims were made on the bonds issued to Tacon, (3) claims were made on the bonds issued to Tacon, (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; an (5) Transamerica has been damaged.[8]

The Avenells contest only the fourth element, arguing that all conditions precedent have not occurred.  In particular, the Avenells contend that a final judgmentSQno longer appealable and currently executorySQin the Grant litigation is a condition precedent to Transamerica's recovery for breach of contract. According to the Avenells, until the Grant litigation is thus final and executory, Transamerica is premature in seeking to recover on the Indemnity Agreement.  In addition to this basic premise, the

---

[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[8] See generally, Ford v. Aetna Ins. Co., 394 S.W.2d 693 (Civ. App.--Corpus Christi 1965, writ ref'd n.r.e.)(discussing the enforceability of indemnity agreements under Texas law).

Avenells advance two corollaries.[9] In the first, they contend that, as the finality of the Grant litigation was a condition precedent, Transamerica acted in bad faith by settling the Grant litigation. In the second, they reason that, as the Grant litigation precludes the instant action, the district court erred in not granting the Avenells' plea in abatement. We disagree with both the general premise and the corollaries derived therefrom.

1. *Condition Precedent*

Among its summary judgment exhibits, Transamerica submitted an authenticated copy of the Indemnity Agreement. Provision 13 of the Indemnity Agreement, entitled "Settlements," provides:

> [Transamerica] shall have the right to adjust, settle or comprise any claim, demand, suit or judgment upon the Bonds, unless [Tacon] and the [Avenells] shall request [Transamerica] to litigate such a claim or demand, or defend such suit, or to appeal from such judgment, and shall deposit with [Transamerica], at the time of such request, cash or collateral satisfactory to [Transamerica] in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of [Transamerica].

Under Provision 13, Transamerica had no duty to seek Tacon's or the Avenells' approval before paying claims on the bonds.[10] To the contrary, that provision imposes a two-prong condition precedent on

---

[9] We deliberately use the procedurally ambiguous term "corollaries," rather than more precise procedural language such as "affirmative defense", "counter-claim", or "motion to dismiss", as it is unclear to us how the Avenells regard these arguments. In their answer and response to motion for summary judgment, these corollaries are labelled affirmative defenses. In their brief to us, the Avenells refer to these same corollaries as counter-claims.

[10] See Ford, 394 S.W.2d at 697-98; English v. Century Indemnity Co., 342 S.W.2d 366, 369 (Civ.App.--San Antonio 1961, no writ).

7

the Avenells:  If they wanted to preclude any such action by Transamerica, the Avenells had to (1) request litigation or defense, and (2) post security.  They did neither.

The Avenells admit in their brief that they neither asked Transamerica to oppose the claims nor posted security to cover Transamerica's exposure.  Although the Avenells demanded that Transamerica not settle the case, absent compliance with their own conditions precedentSQan affirmative request for defense and adequate securitySQthat demand was legally ineffectual.  The Indemnity Agreement does not obligate Transamerica to hear, much less honor, such a demand unless it is accompanied by security. Neither does it proscribe payment or settlement of claims if such claims are being litigated.  Consequently, we hold that under the terms of the Indemnity Agreement, the finality of the Grant litigation was not a condition precedent to Transamerica's right to settle and, to the contrary, that a request for defense and the posting of security by Tacon were conditions precedent to its right to prevent Transamerica from settling.  Thus Tacon's unaccompanied demand that Transamerica make no payments in settlement could notSQ and did notSQdefeat Transamerica's claim or preclude summary judgment in this case.

2.  *Other Conditions Precedent*

The Avenells have identified no other conditions precedent that would prevent summary judgment.  Transamerica presented the affidavit of Rona Endicott, detailing Transamerica's action preceding settlement and averring that all conditions precedent to

8

the contract have been met.  The Avenells have failed to identify in their answer to the complaint, their response to Transamerica's motion for summary judgment, or their brief to us, any putative condition precedent (other than the Grant litigation) that might prevent summary judgment.  Neither have the Avenells offered any summary judgment evidence to support their conclusionary declaration that all conditions precedent have not been performed or occurred, or have been waived.  Therefore, we hold that Transamerica has established that no conditions precedent remain unfulfilled to preclude the grant of summary judgment in this case.

Moreover, as the Avenells dispute no other element of Transamerica's indemnity claim, Transamerica has discharged its initial burden as the party moving for summary judgment.  We find no genuine issue of material fact with respect to those issues on which Transamerica bears the burden of proof.  Only if the Avenells can raise an issue of fact on one of their corollaries can summary judgment be averted.

3.  *The Corollary Arguments*

As mentioned above, the Avenells derive two corollaries from their basic argument that the Grant litigation is a condition precedent.  Although the Avenells affix many different and incorrect procedural labels to each of these subsidiary arguments, both the general premise and the corollaries have the same theme: the Grant litigation somehow precludes Transamerica's breach of contract claim.  As we disagree with the premise, it follows, as the night the day, that we disagree with the corollaries derived

therefrom.  In the interest of completeness, however, we shall briefly address the corollaries.

### a.   Plea in Abatement: Same Song, Second Verse

The Avenells contend that the district court erred by failing to grant their "plea in abatement."  We disagree.  The plea in abatement is an archaic common law pleading which, "without disputing the merits of the plaintiff's claim, objects to place, mode, or time of asserting it."[11]  With the adoption of the Federal Rules of Civil Procedure in 1938, and pursuant to the Rules Enabling Act,[12] the Supreme Court abolished the plea in abatement[13] and replaced it with motions to dismiss under Federal Rules of Civil Procedure 12(b) or 41.[14]  We therefore assume that the Avenells' plea is an attempt to have this case dismissed until the Grant litigation achieves finality.  As we stated above, however, absent a Provision 13 request and security from the Avenells, the Grant litigation presents no bar, procedural or substantive, to this litigation.  We affirm the district court's denial of the Avenells' plea in abatement.

### b.   Bad Faith: Last Verse, Same as The First

In their second corollary, the Avenells argue that Transamerica, by settling prior to the finality of the Grant litigation, acted in bad faith.  We again disagree.  As discussed

---

[11] Black's Law Dictionary 1151-52 (6th ed. 1990).

[12] 28 U.S.C. § 2072 (West 1994).

[13] See Fed.R.Civ.P. 7(c).

[14] See Fed.R.Civ.P. 12(b) & 41.

10

above, the Indemnity Agreement unambiguously and unequivocally spelled out for the Avenells the necessary steps to take if they wanted to prevent Transamerica's settling with the bond obligees. The Avenells did not take these steps. Neither have the Avenells offered any summary judgment evidence supporting their conclusionary allegations of bad faith. According to Transamerica's uncontroverted summary judgment evidence, it exercised its rights under the Indemnity Agreement in good faith and settled with Grant on behalf of its bond beneficiaries, Seaboard and Cahaba.[15] We find no factual support for the Avenells' allegations of bad faith, the burden of proof for which they bear.

In an effort to excuse the absence of such evidence, the Avenells contend that the district court should have granted a continuance for additional discovery. The standard by which we review the district court's denial of a continuance for additional discovery is abuse of discretion, and we will affirm that denial unless it is arbitrary or clearly unreasonable.[16] The district

---

[15] See Firemen's Fund Ins. Co. v. Commercial Standard Ins. Co., 490 S.W.2d 818, 824 (Tex. 1972)(settling indemnitee can recover upon proof of his "potential liability" as well as the reasonableness of the settlement between himself and the third party); H.M. Ford v. Aetna Ins. Co., 394 S.W.2d 693 (Tex.Civ.App.--Corpus Christi 1965)(purpose of indemnity contract is to protect surety; surety was not precluded from recovering on indemnity contract on ground that it had not acted in good faith in paying various sums under the performance and payment bonds insured by it).

[16] Krim v. BancTexas Group, Inc. 989 F.2d 1435, 1441-42 (5th Cir. 1993)(citations omitted); Mayo v. Tri-Bell Indus., Inc., 787 F.2d 1007, 1012 (5th Cir. 1986).

11

court did not abuse its discretion. The only unreasonable conduct that we discern here is the neglect and inattention exhibited by the Avenells. Summary judgment was rendered nine months after this suit was filed and two months after the motion for summary judgment was filed; yet, during this entire time the Avenells made no attempt to conduct discovery. Our review of the district court docket reveals that, despite having notice of all discovery deadlines since the suit was filed, the Avenells failed to comply with the district court's discovery plan in any respect. The Avenells failed to depose -- indeed, they failed even to request to depose -- a single Transamerica agent or employee. The Avenells had more than sufficient time in which to develop evidence of Transamerica's alleged bad faith, but failed to exercise their rights in a timely manner. As the only barrier to discovery was the Avenells' lack of diligence, we see no abuse of discretion by the district court and affirm its denial of the continuance.

D. VOID AS AGAINST PUBLIC POLICY

The Avenells assert that the Indemnity Agreement was against public policy and therefore void, as it requires them to waive their homestead rights in violation of the Texas Constitution.[17] Transamerica counters that the following provision of the Indemnity Agreement, an "invalidities clause," protects against nullity of the entire contract:

> [i]n case any of the parties mentioned in this agreement
> fail to exercise the same, or in case the execution
> hereof by any of the parties be defective or invalid for

---

[17] See Tex. Const. art. XVI, §§ 50-52.

12

> any reason [such as where a state's laws might cause the Agreement to be otherwise invalid], such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

Transamerica explains that this clause is so designed that, if any provision of the contract violates a specific state law, the offending provision is automatically stricken from the agreement as though never written therein, and the rest of the contract remains in full effect, albeit free of the offending provision.  On the other hand, the Avenells contend that the invalidities clause applies only when execution by one of the parties is defective and is thus inapplicable here.

Transamerica's reading of the invalidities clause is correctSQ and the Avenells' incorrectSQfor two reasons:  First, "where the subject matter of the contract is legal, but the contract contains an illegal provision . . . the illegal provision may be severed and the valid portion of the contract enforced."[18]  This is especially true when, as here, the contract itself expressly contemplates and provides for the severance of an illegal provision.  Second, a basic tenet of contractual construction holds that, whenever feasible, an agreement is to be interpreted in a manner that renders performance possible rather than impossible.[19]  The Avenells' construction would render the Indemnity Agreement

---

[18] Panasonic Co. v. Zinn, 903 F.2d 1039, 1041 (5th Cir. 1990).

[19] See, e.g., Temple-Eastex v. Addison Bank, 672 S.W.2d 793 (Tex. 1984).

13

nugatory.  Such a result cannot be what the parties intended.  We conclude that the invalidities clause severs the homestead waiver provision from the Indemnity Agreement:  No lien is created against the Avenells' homestead, but neither is the entire agreement invalidated by its presence.  Thus the Indemnity Agreement is not void under Texas law.  We affirm the district court's construction of the invalidities clause.

E.    ATTORNEY'S FEES

Finally, the Avenells assert that the attorney's fee affidavit submitted by Transamerica is insufficient to justify an award of $69,983.05.  Rule 56(e) requires that, when a motion for summary judgment is made and supported, an adverse party may not rest on mere allegations and denials; rather the adverse party's response must, by competent summary judgment evidence, set forth specific facts showing that there is a genuine issue of fact for trial.

The Indemnity Agreement expressly provides for attorneys' fees and costs.  Counsel for Transamerica submitted a detailed affidavit listing his activities in preparation for the case, including the number of hours worked, the number of hours he anticipated working on the appeal, and his hourly rate.  In their only reference to Transamerica's attorney's fees, the Avenells state in response to the motion for summary judgment that "[d]efendant should certainly not be required to pay any attorney fees to Transamerica as requested."  We belabor the obvious:  This bald assertion does not create a genuine issue of material fact.  The Avenells neither disputed nor produced evidence questioning the contents of Mr.

14

Ryman's affidavit.  The Avenells' failure to contest any particular aspect of Transamerica's attorney's fee award waives this issue on appeal.[20]  Accordingly, we affirm the district court's award of attorney's fees.

III.

CONCLUSION

For the foregoing reasons we find that each of the Avenells' assertions of error is either devoid of merit or has been waived. As a result, the judgment of the district court is, in all respects,

AFFIRMED.

---

[20] <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992) (Court of Appeal's inquiry is limited to summary judgment record before trial court; parties cannot add exhibits, depositions, or affidavits to support their position on appeal, nor may parties advance new theories or raise new issue to secure reversal); <u>McQueen Contracting v. Fidelity & Deposit Co.</u>, 863 F.2d 1216, 1219 (5th Cir. 1989)(party may not wait until trial or appeal to develop claims or defenses in response to summary judgment motion).