# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2021

Lyle W. Cayce
Clerk

No. 20-30249

Fredricka C. Wright,

*Plaintiff—Appellant*,

*versus*

United Parcel Service, Incorporated (Ohio), *incorrectly named as* United Parcel Service, Incorporated (Delaware),

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:19-CV-57

Before Haynes, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Fredricka Wright challenges the summary judgment dismissing her age and sex discrimination claims against United Parcel Service, Inc. ("UPS"). We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30249

## I

Wright's claims arise out of her second stint with UPS in August 2017, when she was forty years old.[1] She was hired to work in the "preload" phase, which includes both the loading and unloading of UPS trucks. Wright worked as an unloader for about a month before she was fired. According to UPS, Wright was fired for failing to maintain a satisfactory "flow rate," a metric measuring the number of packages preload employees handle in an hour. Believing instead that she was fired because of her age and sex, Wright sued UPS under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She also claimed the UPS facility where she worked was a hostile work environment. The district court granted UPS summary judgment on all Wright's claims. It concluded that Wright failed to establish a *prima facie* case on either discrimination claim and, moreover, that UPS proffered a legitimate, non-discriminatory reason for her firing (poor performance) that Wright failed to rebut. The court also found Wright produced no evidence of a hostile work environment. Wright appeals.

## II

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must "point out the absence of evidence supporting the nonmoving party's case." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). If that burden is met, the nonmovant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.*

---

[1] Wright first worked for UPS during the 2016-2017 "peak season," which lasts from October to January. None of her discrimination claims concerns that period.

2

No. 20-30249

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). "Questions of law are decided just as they are outside of the summary judgment context: *de novo*." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (per curiam).

## III

### A

The ADEA prohibits age-based employment discrimination against persons, like Wright, who are at least forty years old. 29 U.S.C. §§ 623, 631. Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under both statutes, plaintiffs may prove their case either through direct or circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003) (Title VII); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (ADEA); *see also Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) ("In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both."). This appeal involves only circumstantial evidence of discrimination.[2] When a plaintiff relies on

---

[2] Wright claims she presented direct evidence of discrimination but includes no record citations in her opening brief to support that assertion, as the rules require. *See* Fed. R. App. P. 28(a)(8)(A); 5th Cir. R. 28.2.2. We therefore need not address this argument. *See Rutherford v. Harris Cnty.,* 197 F.3d 173, 193 (5th Cir. 1999) ("[W]e will not consider an issue that is inadequately briefed."); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (explaining it "is [not] our duty" to "sift through the record in search of evidence to support a party's opposition to summary judgment"). Even had Wright not forfeited the argument, however, she offers no colorable examples of "direct" discrimination in her brief. For instance, Wright claims (again, without record citation) that she was "subjected to repeated bullying." Direct evidence, however, is a "statement or written document showing [the employer's] discriminatory motive on its face." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994); *see also Sandstad v. CB*

circumstantial evidence, we assess her claim under the *McDonnell Douglas* burden-shifting framework. *See*, *e.g.*, *Roberson-King v. La. Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 380 (5th Cir. 2018) (Title VII); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (ADEA).[3] Under that framework, the plaintiff must first make out a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she does, the employer must then proffer a legitimate, non-discriminatory reason for the adverse employment action. *Ibid.* If one is presented, the burden shifts back to the employee, who may then rebut the proffered reason by showing it was pretextual. *Id.* at 804.

A plaintiff makes a *prima facie* case of discrimination by showing she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016). The district court concluded Wright's *prima facie* case failed at prong four. Wright challenges that conclusion on appeal, arguing she was "replaced by a younger male" and treated less favorably than two similarly situated male workers. The record, however, confirms the district court was correct.

Wright admitted in her deposition that she did not know who was hired to replace her after she was fired. On appeal, she argues only that, since

---

*Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."). None of the instances Wright mentions fall into this category.

[3] While the Supreme Court "has not definitively resolved" whether the *McDonnell Douglas* framework applies to ADEA claims, "we are bound by our circuit precedent" to apply it. *Jackson*, 602 F.3d at 378; *see also id*. n.15 (collecting authority).

her firing, "there has never been a female employee employed in unloading." But Wright points to nothing in the record supporting that claim. She only cites testimony from one of her supervisors, Tyler Burns, and a coworker, Hawan Johnson, but neither suggests that UPS stopped hiring female unloaders after Wright was fired, much less that Wright was replaced by a younger male. Burns was asked if a particular employee was the "only female that currently works in pre-load" and said he did not know. Johnson, after admitting she was "not sure" who replaced Wright, stated only that she "believe[d]" she was the "only female" left after Wright. This speculation does not create a genuine dispute that a male or a younger worker replaced Wright. The district court thus correctly ruled that Wright failed to adduce evidence that she was "replaced by someone outside h[er] protected group." *Morris*, 827 F.3d at 400.

Wright also argues UPS treated her less favorably than two male employees, "Anthony and Rock," who she contends had similar performance issues but, instead of being fired, were "given lighter work duties" and "encouraged to do better." As the district court found, the record fails to support this contention. Wright relies solely on the deposition of her immediate supervisor, Edward Small. But Small never mentions Anthony or Rock. Nor does Small suggest that some slow-performing workers were treated better than others. When asked what he would do if a "person" failed to maintain an adequate flow rate, Small explained that he would "just try to encourage them because [there is] a time limit" and that if "somebody" was "not making the flow rate" it would impede the operation. This testimony comes nowhere close to showing that similarly situated employees outside Wright's protected class were treated better than she was. Accordingly, we agree with the district court that Wright failed to make out a *prima facie* case in this respect as well. *Cf. Johnson v. Louisiana,* 351 F.3d

616, 624 (5th Cir. 2003) (affirming summary judgment when plaintiffs "presented no evidence" regarding one of the four *prima facie* prongs).

But even assuming a *prima facie* case, the district court was right that Wright's discrimination claims would still fail because UPS showed a legitimate basis for her firing that Wright failed to rebut. As the court found, the record shows UPS fired Wright because "her flow rate was down" and she "wasn't meeting the package count." That shifts the burden back to Wright to show the claimed basis was "mere pretext." *Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 356 (5th Cir. 2019). She failed to do so.

Wright argues UPS's explanation is "unworthy of credence," *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), because UPS did not raise Wright's performance issues until after she was fired. She claims her supervisor, Small, testified in deposition that he had no issues with her performance, contradicting a letter he wrote a month after Wright's firing that noted her slow unloading rate. The record again belies Wright's argument. Small's deposition testimony explicitly recognized Wright's slow performance: asked whether he thought Wright had done a "good job overall," Small said Wright's "flow rate was down a lot" and explained that "[i]f you're not keeping up with your flow rate[,] everything slows down." This testimony is consistent with Small's post-firing letter, which explained that he had to counsel Wright "about her performance being on time" and noted that "other employees [were] trying to take up slack" because Wright's packages were "not being unloaded in a timely manner." We therefore agree with the district court that, even assuming a *prima facie* case,

No. 20-30249

Wright failed to rebut UPS's legitimate, non-discriminatory reason for her firing.[4]

For either reason, the district court properly granted summary judgment on Wright's age and sex discrimination claims.

**B**

We also agree the district court properly granted summary judgment on Wright's hostile work environment claim.

To make out a *prima facie* hostile work environment claim, Wright must establish that:

> (1) she belong[ed] to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [her membership in the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The district court concluded Wright had not been subjected to any harassment severe enough to affect a term, condition, or privilege of employment. On appeal, Wright contests this conclusion on two grounds. First, she points to evidence that UPS assigned her to unloading, rather than loading, "for almost the entirety of her employment." Second, she claims evidence shows her supervisors,

---

[4] Wright argues at length that she "did not have an adequate opportunity to complete discovery" and that the district court erred when it refused to extend various discovery deadlines and grant discovery-related motions. "A district court's rulings on discovery motions are largely discretionary and will be reviewed only when they are arbitrary or clearly unreasonable." *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 164 (5th Cir. 1994). Wright has not shown that the district court's discovery rulings transgressed this high threshold.

including Small, made "derogatory" and "discriminatory" comments. Both arguments are unavailing.

Wright's first argument fails because being assigned to unloading, rather than loading, is not evidence of harassment, much less harassment so severe or pervasive that it impacted the terms, conditions, or privileges of her employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993); *see also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) ("[C]onduct that sporadically wounds or offends but does not hinder" an "employee's performance" is not actionable under Title VII.). As the district court found, the positions of loader and unloader are "comparable . . . with similar essential job functions and the same pay." Wright argues unloading is more physically demanding than loading, but the record shows otherwise: Small explained the positions involve the same amount of exertion, an assessment independently corroborated by two other UPS employees and the U.S. Department of Labor's classification of the positions. Furthermore, Wright herself recognized that most new employees start in unloading before being transferred to loading, as she eventually was. In sum, by asking Wright to spend most of her tenure in unloading, as it typically asks of new hires, UPS did not engage in "harassment," much less the "severe and pervasive" harassment necessary to create a hostile work environment. *See*, *e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (explaining "harassment" is conduct with "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment").

The court also properly rejected Wright's claim that her supervisors' alleged comments created a hostile work environment. Like other forms of harassment, actionable derogatory comments must be so severe or pervasive that they render the work environment "both objectively and subjectively offensive." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.

No. 20-30249

2012). Isolated incidents, unless extremely serious, do not suffice. *Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). As the Supreme Court has explained, "the sporadic use of abusive language, gender-related jokes, and occasional teasing" does not satisfy the "demanding" standard for hostile work environment claims. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The comments Wright identifies do not clear this high hurdle. For instance, she claims (without any further elaboration) that Small "specifically asked" about her age, made "derogatory comments about [her] begging for her job and having to feed her children," and made "discriminatory comments about Wright's makeup and performance." Assuming Small made these remarks, a workplace is not made legally hostile by mere utterance of "boorish and offensive" comments. *Shepherd v. Comptroller of Pub. Accts. of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). Moreover, the district court also correctly found that these alleged comments were "isolated" and not sufficiently severe. *See, e.g., Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013) (even isolated utterances of a highly offensive racial slur did not qualify as "severe"). In sum, because the comments Wright cites were neither severe nor pervasive, the district court properly granted summary judgment dismissing her hostile work environment claim.[5]

---

[5] Wright also appeals the denial of her motion to disqualify UPS's counsel and the order imposing sanctions for filing that motion. Wright's motion to disqualify suggested UPS's counsel were potential witnesses, a claim the district court rejected as "wholly groundless." We see no abuse of discretion in that ruling. *See Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 872–73 (5th Cir. 1988) (en banc). As for the sanction, Wright's opening brief merely calls it "unfair, excessive, harsh and unwarranted." Only in her reply brief does she make a substantive argument that the court failed to give sufficient notice under Rule 11. She has therefore forfeited that argument. *See Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir. 2011) ("Arguments raised for the first time in a reply brief are forfeited.").

No. 20-30249

\*\*\*

The district court's judgment is AFFIRMED.